IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**BLACK LAND MANAGEMENT, INC.,**

**Plaintiff,**

**v.**                    **//    CIVIL ACTION NO. 1:15CV24**
                              **(Judge Keeley)**


**POSTROCK EASTERN PRODUCTION, LLC**
**f/k/a QUEST EASTERN RESOURCE, LLC,**

**Defendant.**


**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 5]**

Pursuant to Fed. R. Civ. P. 12(b)(6), the defendant, PostRock
Eastern Production, LLC f/k/a Quest Eastern Resource, LLC
("PostRock"), has moved to dismiss the complaint filed by the
plaintiff, Black Land Management, Inc. ("Black Land"). PostRock
contends that, under the terms of an oil and gas arrangement, it
has no obligation to make the payments sought by Black Land. For
the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN
PART** the motion.

                              **I.**

In this case, Black Land claims entitlement to payments under
the terms of an amended and restated oil and gas lease (the
"Amended Lease") and a settlement agreement (the "Settlement
Agreement") entered into by the parties. The claimed payments
relate to (1) Black Land's obtaining of quiet title to certain

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

acreage, and (2) its identification of additional acreage not set forth in the Amended Lease.  PostRock contends that Black Land is not entitled to any additional payments under the terms of the Amended Lease and Settlement Agreement.

**A.**

Black Land is an Ohio corporation with its principal place of business in West Virginia.  PostRock is the successor in interest to PetroEdge Resources, LLC ("PetroEdge").  Its sole member, PostRock Energy Services Corporation, is incorporated in Delaware and has its principal place of business in Oklahoma.

In November 2007, Black Land and PetroEdge entered into an oil and gas lease for the mineral rights underlying 1512.82 acres in Lewis and Braxton Counties in West Virginia.  (Dkt. No. 9 at 24). On November 10, 2010, PostRock, who had succeeded PetroEdge, filed a declaratory judgment action against Black Land, seeking a declaration that the lease remained in full force and effect (the "State Action").  Black Land counterclaimed, seeking a declaration that the lease had terminated.  Presumably in an effort to resolve their dispute before incurring additional expenses, the parties signed the Amended Lease on November 11, 2010, the day after the lawsuit was filed.  However, they did not sign the Settlement Agreement until June 14, 2011.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**B.**

The Amended Lease "superseded and replaced" all terms and
provisions in the original lease, and permitted PostRock to extract
the oil and gas from five tracts of land totaling 1410.33 acres.
Id. at 1, 2, 38.  Among those five tracts, the three relevant to
the present motion are: (1) the "Brewster Tract," which purportedly
contained 100 acres; (2) the "Goodwin Tract," which purportedly
contained 125 acres; and (3) the "Pickens Tract," which purportedly
contained 515.09 acres.

Importantly, the "Term" provision, or "habendum clause," of
the Amended Lease stated:

> TO HAVE AND TO HOLD said Premises for the purposes
> aforesaid from November 12, 2007, through and until
> December 31, 2012 (hereinafter called the "Primary
> Term"), and as long thereafter as drilling or reworking
> operations for oil or gas are conducted thereon as
> provided herein and oil or gas is produced in paying
> quantities therefore, or this Lease is extended by any
> subsequent provision hereof, as hereinafter provided.

Id. at 2.  In a subsequent provision concerning "Events of Default
and Termination," and commonly referred to as a "notice and demand
clause," the parties agreed that,

> [n]otwithstanding the occurrence of any Event of Default,
> this Restated Lease shall not be forfeited or terminated
> unless and until Lessee shall have been given an
> additional notice in writing by Lessor that the Event of
> Default exists or is otherwise continuing and Lessee
> shall have been given: fifteen (15) days after such

3

> notice withint which to comply in the case of an Event of
> Default of a character described in subparagraph (a)
> above, and/or thirty (3) days after such notice within
> which to cure or commence and thereafter diligently
> pursue action (if compliance is not reasonably achievable
> within thirty (30) days) to cure the Event of Default.

Id. at 10.

The Amended Lease provided that PostRock would pay Black Land a one-time payment of ███████ to cover rent for the Primary Term.  However, the parties agreed to adjust that amount by ██████ per acre "if [PostRock] determines, or [Black Land] proves, that there is acreage within the Premises in excess of the acreage recited herein."  Id. at 3, 4.

Additionally, the Amended Lease identified "clouds" on Black Land's title relative to 62.5 acres of the Goodwin Tract, and the 100 acres thought to be contained in the Brewster Tract (collectively, the "Clouded Acreage").  It provided a term of twelve months for Black Land "to attempt to acquire said royalty/mineral interests."  Significantly, it further provided that,

> [i]n this regard, in the event that Lessor has within
> said 12 month period initiated litigation in connection
> with its effort to clear title and/or acquire said
> interests, then Lessor shall have an additional period of
> time until December 31, 2012 within which Lessee will not
> make any efforts to lease or acquire said interests for
> itself. Provided, further, that in the event that Lessor
> has initiated litigation but the same has not concluded

> by December 31, 2012, then so long as Lessor has acted in
> good faith in pursuing its claims and has diligently
> prosecuted said action, then Lessor shall have an
> additional reasonable period of time beyond December 31,
> 2012 within which to conclude said litigation and during
> which Lessee will not make any efforts to lease or
> acquire said interests for itself[.]

Id. at 11.

The Amended Lease also included several miscellaneous provisions relevant here. Under the "Surrender" provision, "[PostRock], at any time and from time to time, may surrender this Restated Lease as to all or any part or parts of the Premises by recording an appropriate instrument of surrender . . . . Notwithstanding anything contained herein to the contrary, [PostRock] shall also continue to be bound by any obligation specified herein to survive the expiration or termination of this Restated Lease." Id. at 13. The "Waiver" term provided that a party's failure to, or delay in, exercising its rights "shall not operate as a waiver of any right or otherwise prejudice the party from exercising any right in the future." Id. at 19. Finally, the "Confidentiality" provision prevents the parties from revealing the financial terms of their agreement until June 1, 2016. Id. at 20.

**C.**

In the Settlement Agreement, signed seven months after the Amended Lease, the parties expressed their interest to "resolve the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

issues and controversies between them, including the claims and

counterclaims asserted or which could have been asserted in the

[State Action]." (Dkt. No. 11 at 1). As to the Clouded Acreage,

the Settlement Agreement provided as follows:

> Black Land shall endeavor to clear said "clouds" and
> obtain good and marketable title to the mineral interests
> associated with said acreage. In the event that within
> the period of 12 months from the date hereof [June 14,
> 2011], Black Land is successful in obtaining good and
> marketable title as normally accepted within the oil and
> gas industry to all or a portion of said 162.5 acres,
> then [PostRock] shall pay to Black Land as an additional
> lease bonus payment the sum of ▇▇▇▇▇▇ per acre for
> each acre concerning which Black Land in fact holds good
> and marketable title -- up to a maximum of ▇▇▇▇▇.
> Payments to Black Land hereunder shall be made not later
> than 30 days following Black Land's delivery to
> [PostRock] of evidence of good and marketable title. In
> this regard, in the event that Black Land has within said
> 12 month period initiated litigation in connection with
> its effort to clear title and/or acquire said mineral
> interests, then Black Land shall have an additional
> period of time until December 31, 2012 within which to
> obtain good and marketable title to said mineral
> interests and receive payment therefor from [PostRock] as
> set forth above. Provided, further, that in the event
> that Black Land has initiated litigation but the same has
> not concluded by December 31, 2012, then so long as Black
> Land has acted in good faith in pursuing its claims and
> has diligently prosecuted said action, then Black Land
> shall have an additional reasonable period of time beyond
> December 31, 2012 within which to conclude said
> litigation.

Id. at 3-4.

In addition, the Settlement Agreement contained an "Entire

Agreement" term, which provided that:

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

> This Agreement and the Restated and Amended Lease
> attached hereto and incorporated herein constitute the
> entire understanding and agreement by and between the
> parties, and no other, different or additional agreements
> have been made. This Agreement may not be modified or
> amended except by a written instrument signed by both
> parties.

Id. at 7.

### D.

In June 2012, Black Land advised PostRock that it intended to
pursue a claim for additional acreage. On December 1, 2012, Black
Land commissioned surveys of the Brewster and Pickens Tracts. The
surveyor provided the survey of the Pickens Tract to Black Land on
July 20, 2013, and Black Land provided it to PostRock on November
1, 2013. The survey established that the Pickens Tract actually
contained 548.68 acres, as opposed to the 515.09 acres set forth in
the Amended Lease. Similarly, the survey of the Brewster Tract,
which Black Land provided to PostRock on December 5, 2014,[1]
established that it encompassed 153.4 acres, rather than the 100
acres identified in the Amended Lease.

Black Land also took steps towards quieting their title to the
Clouded Acreage. On June 13, 2012, it sued the claimants to the
Goodwin Tract in the Circuit Court of Braxton County. On August

---

[1] The pleadings do not reveal the date on which the surveyor
provided the survey of the Brewster Tract to Black Land.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

13, 2013, that court entered an "Agreed Order of Judgment," removing the cloud on Black Land's title to the Goodwin Tract. Likewise, Black Land sued the claimants to the Brewster Tract -- allegedly before June 14, 2012 -- for quiet title to the acreage. On July 9, 2014, the Circuit Court of Braxton County entered an order awarding Black Land the relief sought.

At some unknown point in time, Black Land demanded payment from PostRock for the newly surveyed additional acreage, as well as the Clouded Acreage for which it had obtained quiet title. PostRock refused to make any additional payments, taking the position that "[t]he underlying contract expired by its terms on December 31, 2012 and PostRock [] had no contractual duty thereafter to tender additional payments to Black Land." (Dkt. No. 6 at 9). PostRock's refusal precipitated this action.

**E.**

On February 10, 2015, Black Land filed a complaint against PostRock in the Circuit Court of Braxton County, asserting claims for breach of contract ("Count I"), accounting ("Count II"), unjust enrichment ("Count III"), and conversion ("Count IV"). PostRock removed the case to this Court on February 13, 2015, and subsequently filed the pending motion to dismiss.

8

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

PostRock argues that "the breach of contract claims fail as a matter of law because the underlying contracts [i.e. the Amended Lease and the Settlement Agreement] terminated by their express terms prior to the events giving rise to [Black Land's] claims." (Dkt. No. 5 at 1-2). Moreover, they contend that "[t]he remaining counts set forth in the Complaint –- accounting, unjust enrichment, and conversion –- are premised upon and dependent upon the breach of contract claims and must therefore be dismissed as well." <u>Id.</u> at 2. Following several stipulations extending the response and reply deadlines, PostRock's motion is fully briefed and ripe for review.

**II.**

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" <u>Anderson</u>, 508 F.3d at 188 (quoting <u>Twombly</u>, 550 U.S. at 547).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)).

Finally, courts may "take judicial notice of matters of public record," and may consider documents attached to the complaint and the motion to dismiss "so long as they are integral to the complaint and authentic." <u>Philips v. Pitt Cnty. Mem. Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009) (citing <u>Blankenship v. Manchin</u>, 471

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

F.3d 523, 526 n.1 (4th Cir. 2006)); <u>see also</u> <u>Am. Chiropractic Ass'n</u>

<u>v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004);

<u>Philips v. LCI Int'l Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999).

### III.

### A.

First, the Court must determine whether the parties have
validly incorporated the terms of the Amended Lease into the
Settlement Agreement, which, by its own terms, is governed by West
Virginia law.  (Dkt. No. 11 at 5).  Under West Virginia law,

> parties may incorporate by reference separate writings
> together into one agreement.  However, a general
> reference in one writing to another document is not
> sufficient to incorporate that other document into a
> final agreement.  To uphold the validity of terms in a
> document incorporated by reference, (1) the writing must
> make a clear reference to the other document so that the
> parties' assent to the reference is unmistakable; (2) the
> writing must describe the other document in such terms
> that its identity may be ascertained beyond doubt; and
> (3) it must be certain that the parties to the agreement
> had knowledge of and assented to the incorporated
> document so that the incorporation will not result in
> surprise or hardship.

Syl. Pt. 2, <u>State ex rel. U-Haul Co. v. Zakaib</u>, 752 S.E.2d 586, 589

(W. Va. 2013); <u>see also</u> <u>Art's Flower Shop, Inc. v. Chesapeake &</u>

<u>Potomac Tel. Co.</u>, 413 S.E.2d 670, 673 (W. Va. 1991) ("Nothing in

West Virginia statutes or case law precludes incorporation of prior

contract provisions by reference to an earlier contract."); <u>Ashland</u>

Oil, Inc. v. Donahue, 223 S.E.2d 433, 469 (W. Va. 1976) ("It is a well-recognized principle of law that, even though writings may be separate, they will be construed together and considered to constitute one transaction when the parties are the same, the subject matter is the same and the relationship between the documents is clearly apparent.").

Here, the Settlement Agreement makes numerous, specific references to the Amended Lease, including the first provision, which states that, "[c]ontemporaneously with the execution hereof, [the parties] shall execute that certain Amended and Restated Lease, a copy of which is attached hereto, marked Exhibit '2' and incorporated herein by reference." (Dkt. No. 11 at 2). Moreover, the "Entire Agreement" term provides that "[t]his Agreement and the Restated and Amended Lease attached hereto and incorporated herein constitute the entire understanding and agreement by and between the parties." Id. at 7. These provisions, and the ubiquitous references to the Amended Lease, leave little doubt that the parties assented to the incorporation of the Amended Lease into the Settlement Agreement. Consequently, the Court will construe both documents as a single contract.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**B.**

The essence of PostRock's argument is that Black Land failed to apprise it of the additional acreage, and failed to take the necessary steps to quiet title, within the requisite time frame. Specifically, PostRock relies on the habendum clause, which permitted it to extract oil and gas until December 31, 2012, and "as long thereafter as drilling or reworking operations for oil or gas are conducted thereon as provided herein and oil or gas is produced in paying quantities therefore . . . ." Because there is no dispute that drilling operations had discontinued as of December 31, 2012, PostRock contends that any contractual arrangement between it and Black Land terminated on that date.

The issues involved here are more nuanced than PostRock's argument suggests. Certainly, the Primary Term of the parties' contractual arrangement concluded on December 31, 2012. That is to say, PostRock could no longer enter Black Land's property to extract oil and gas as of that date. However, not all of the parties' obligations ceased at the conclusion of the Primary Term. For example, both parties agree that their obligation to keep confidential the financial terms of their arrangement is ongoing. Thus, the real question is not whether the Primary Term has concluded, but rather whether PostRock's continuing obligations

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

include an obligation to pay Black Land for additional acreage and quiet title.

In analyzing this issue, the first question to be resolved is whether any of the miscellaneous provisions relied on by PostRock lengthened its time period in which to seek payment for additional acreage and quiet title. The second issue involves the specific provisions affecting the parties' obligations concerning quiet title and additional acreage. In undertaking this analysis, the Court remains cognizant of "three well-recognized rules" of contract construction: "(1) that the intentions of the parties to the agreement must control the obligations thereunder; (2) that in searching for the intentions of contracting parties, the court must examine the instrument in its entirety; and (3) that words are to be considered in the context in which they are employed." Syl. Pt. 2, <u>Columbia Gas Transmission Corp. v. E.I. du Pont de Nemours & Co.</u>, 217 S.E.2d 919, 920 (W. Va. 1975).

**C.**

Black Land points to the final phrase from the habendum clause, which qualifies that the Primary Term of the Amended Lease shall continue so long as "this Lease is extended by any subsequent provision hereof, as hereinafter provided." It then points to several "subsequent provisions hereof" that it contends extend the

14

term of the Amended Lease, such that PostRock's obligations never
terminated.

First, Black Land argues that the notice and demand clause
requires it to provide notice of default to PostRock as a condition
precedent to termination.  This argument, however, is contrary to
well-established law, holding that "[a] notice and demand clause in
an oil and gas lease (or other mineral lease) has no effect upon
the habendum clause or cessation of production clause of the
lease." McCullough Oil, Inc. v. Rezek, 346 S.E.2d 788, 795-96 (W.
Va. 1986).  And although the notice and demand clause does relate
to "contractual obligations (covenants) of the lessee under the
lease," id. at 796, its purpose is to protect the lessee from "an
inadvertent breach of contract and an unexpected cancellation of
the lease." Id. at 795.  Notwithstanding that purpose, Black Land
attempts to wield the provision as a unilateral means of
perpetuating PostRock's payment obligations for an indefinite
period of time.  The Court finds no support for Black Land's
position in the notice and demand clause.

Next, Black Land points to the surrender clause, which
permitted PostRock to cancel the lease as to the entire acreage or

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

any part of it at any time and for any reason.[2]  Although such surrender would terminate the lease, "[n]otwithstanding anything contained herein to the contrary, [PostRock] shall also continue to be bound by any obligation specified herein to survive the expiration or termination of this Restated Lease."  Black Land excises this final sentence and argues that it is dispositive of the question whether PostRock's purported obligations had terminated.

Such argument is misguided.  Under West Virginia law, courts interpreting contracts apply the doctrine of <u>noscitur a sociis</u>, which "dictates that language should be construed in accordance with the words which are its associates."  <u>Change, Inc. v. Westfield Ins. Co.</u>, 542 S.E.2d 475, 479 (W. Va. 2000) (per curiam).  Accordingly, the Court reads the final sentence of the surrender clause as applying only in the event of termination by surrender, rather than applying broadly to termination of any sort.  As a result, because PostRock never exercised its right to surrender, the final sentence of the clause was never triggered.

---

[2] Typically, a lessee's exercise of its right to surrender "releases the lessee from further liability under the lease, except as to debts or obligations existing at the time of the surrender."  58 C.J.S. <u>Mines and Minerals</u> § 296 (2015) (citing <u>Hefner v. Light, Fuel & Power Co.</u>, 87 S.E. 206 (W. Va. 1915)).

Even if the final sentence applied broadly to any type of termination, it simply reflects the parties' acknowledgment of certain obligations that would remain viable even after termination. Importantly, the sentence limits the universe of those obligations to only those that are "specified herein to survive the expiration or termination of this Restated Lease." In other words, any obligation that would survive termination requires an independent basis for its continued viability. Thus, the final sentence of the surrender clause adds little, if anything, to Black Land's position in this litigation.

Finally, Black Land relies on the waiver and confidentiality provisions. As noted, the parties agree that their obligations regarding confidentiality remain intact until June 1, 2016. The waiver clause (which is arguably unenforceable, see Lowe's Home Ctrs., Inc. v. THF Clarksburg Dev. Two, LLC, No. 1:12CV72, 2014 WL 1048521, at *7 (N.D.W. Va. Mar. 18, 2014)) simply provides that a party's failure to exercise a given right does not preclude it from asserting its rights in the future. It is unclear how this ties into Black Land's claim to payments, or bolsters its overarching argument. At bottom, Black Land's contention that these miscellaneous provisions afforded it an indefinite time period within which to assert claims to payment is a red herring.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**D.**

Unlike the provisions above, the "Quality of Title" provision in the Amended Lease, and the "Contingent Additional Lease Rental Bonus Payment" provision in the Settlement Agreement, relate specifically to Black Land's claim regarding the Clouded Acreage. Notably, the Amended Lease says nothing about any payments PostRock would owe to Black Land concerning the Clouded Acreage. Rather, it contemplates Black Land's efforts to quiet its title as partial consideration for PostRock's lump-sum rental payment. Regardless, so long as Black Land "initiated litigation" within "a period of twelve (12) months" and "acted in good faith in pursuing its claims," the Amended Lease extended the time period for an "additional reasonable period of time beyond December 31, 2012 within which to conclude said litigation."

The "Contingent Additional Lease Rental Bonus Payment" provision in the Settlement Agreement supplemented the "Quality of Title" provision by stating: "In connection with the Amended and Restated Lease, there are 162.5 acres . . . included in the lease premises concerning which there exist some 'clouds.'" As to the time period Black Land had to quiet title, the Settlement Agreement provided a "period of 12 months from the date hereof." Payment for the Clouded Acreage was contingent on Black Land being "successful

in obtaining good and marketable title as normally accepted within
the oil and gas industry."

As in the Amended Lease, the Settlement Agreement went on to
provide that, "in the event that Black Land has within said 12
month period initiated litigation . . . , then Black Land shall
have an additional period of time until December 31, 2012 within
which to obtain good and marketable title to said mineral interests
and receive payment therefor from [PostRock]."  It continued by
providing that, if litigation had commenced but not concluded
before December 31, 2012, and Black Land had prosecuted the actions
diligently, "then Black Land shall have an additional reasonable
period of time beyond December 31, 2012 within which to conclude
said litigation."

Black Land alleges that it "initiated litigation to quiet
title on the Brewster and Goodwin Tracts before June 14, 2012."
(Dkt. No. 15 at 8).  Notably, the Amended Lease suggested that
litigation had to be commenced by November 11, 2011; however, the
Settlement Agreement unquestionably extended this deadline to June
14, 2012, by describing the time period as "12 months from the date
hereof."  Because Black Land initiated its quiet title litigation
within the requisite time period, and there is no indication that
it did not prosecute the action diligently, the only question is

whether it "conclude[d] said litigation" within "an additional reasonable period of time beyond December 31, 2012."

Black Land obtained judgments quieting its title to the two tracts on August 13, 2013, and July 9, 2014. PostRock does not contend that this additional time was unreasonable. Rather, it cites a decision of the Supreme Court of Appeals of West Virginia from more than a century ago for the proposition that, "if there is no provision therein contained requiring and [sic] boring of another well after the first unsuccessful attempt is completed and abandoned, the least [sic] becomes invalid, and of no binding force as to any of its provisions." Syl. Pt. 3, <u>Steelsmith v. Gartlan</u>, 29 S.E. 978 (1898).

PostRock's reliance on <u>Steelsmith</u> makes little sense in light of its concession that "the parties intended that certain, limited rights and duties would survive the expiration or termination of the Amended Lease." (Dkt. No. 22 at 7). Based on the terms of the Amended Lease and Settlement Agreement as discussed above, this Court has little difficulty finding mutual intent to extend Black Land's opportunity to quiet title beyond the expiration of the Primary Term. Therefore, the Court **DENIES IN PART** PostRock's motion to dismiss as to the Clouded Acreage.

20

### E.

Turning to the additional acreage, the "Paid-up Rental Payments" and "Additional Acreage" provisions in the Amended Lease relate specifically to PostRock's obligation to pay Black Land for acres not set forth in the agreement but subsequently proven.  In this regard, paragraph 5(b) states that, "if [PostRock] determines, or [Black Land] proves, that there is acreage within the Premises in excess of the acreage recited herein, then the Rental Payment will be adjusted proportionally in accordance with paragraph 6 below, and an adjustment promptly paid to [Black Land] upon discovery of such acreage variance."  Paragraph 6, in turn, provides that the amount of ███ per acre "shall also apply to any additional acreage as provided for in paragraph 5(b)."

In contrast to the quiet title provisions, the additional acreage provisions do not contemplate any extension of time. Indeed, the context within which PostRock's obligation is couched strongly suggests that the obligation expired with the Primary Term.  Paragraph 5(b) states: "This is a paid-up Restated Lease and shall, subject to the terms and conditions of this Restated Lease, remain in full force and effect <u>during the Primary Term</u>, <u>with no additional Rental Payment being due hereunder</u>."  (Dkt. No. 9 at 3) (emphasis added).  Moreover, paragraph 6, which primarily discusses

21

PostRock's right of first refusal to lease subsequently acquired acreage, provides that, "[i]n all events, [PostRock's] option as described herein <u>shall expire on December 31, 2012</u>." <u>Id.</u> at 4 (emphasis added). These provisions undermine any contention that PostRock had a prolonged obligation to pay Black Land for additional acreage.

Nor does Black Land's pre-termination notification of its intent to pursue payment for additional acreage save the claim. The plain language of the Amended Lease required Black Land to "prove" additional acreage. No proof existed until both parties received the surveys, which occurred after the expiration of the Primary Term. Therefore, the Court **GRANTS IN PART** PostRock's motion as to the additional acreage.

### IV.

In conclusion, for the reasons discussed, the Court **GRANTS IN PART** PostRock's motion as to any claims premised on the additional acreage, and **DENIES IN PART** PostRock's motion as to any claims premised on the Clouded Acreage.

It is so **ORDERED**.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: June 19, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE